CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

NOV 23 2005

JOHN F. CORCORAN, CLERK
BY:
        DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

SOUTHPRINT, INC., )
d/b/a CHECKERED FLAG SPORTS )
    Plaintiff )
     )
     )    Case No. 4:02cv038
v. )
     )
     )    **MEMORANDUM OPINION**
H3, INC., )
    Defendant. )
     )    **By:   Hon. Michael F. Urbanski**
     )    **      United States Magistrate Judge**

On September 8, 2005, the court granted defendant H3, Inc's ("H3") motion for summary judgment against plaintiff Southprint, Inc. d/b/a Checkered Flag Sports ("Southprint"). This matter is now before the court on H3's motion to award attorney fees pursuant to 15 U.S.C. § 1117(a) and costs incurred in litigating this matter. The matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(3) by order dated September 12, 2005.

**I.**

The Lanham Act permits the court to award reasonable attorney fees to the prevailing party, but only in exceptional cases. 15 U.S.C. § 1117(a). However, the statute does not define what constitutes an "exceptional case." The Fourth Circuit has generally defined an "exceptional case" as one in which the non-prevailing party's conduct was "malicious, fraudulent, willful or deliberate in nature." People for the Ethical Treatment of Animals v. Doughney, 263 F.3d 359, 370 (4th Cir. 2001). Although a prevailing plaintiff must show that the defendant acted in "bad faith" to recover attorney fees, a prevailing defendant may qualify for such a reward with a showing of "something less than bad faith." Scotch Whisky Ass'n v. Majestic Distilling Co., 958 F.2d 594, 599 (4th Cir.1992) (quoting Noxell Corp. v. Firehouse No. 1 Bar-B-Que Restaurant, 771 F.2d 521, 526 (D.C.Cir.1985)). Accordingly, in assessing a plaintiff's conduct when the

defendant prevails, the court must focus on the plaintiff's "litigation conduct or pre-litigation assertion of rights." Retail Services, Inc. v. Freebies Publishing, 364 F.3d 535, 550-551 (4th Cir. 2004). Specific consideration should be given to plaintiff's use of economic coercion, groundless arguments, and failure to cite controlling law. Ale House Mgmt. v. Raleigh Ale House, Inc., 205 F.3d 137, 144 (4th Cir. 2000).

Although H3 does not allege that plaintiff used economic coercion or failed to cite controlling law, H3 contends that Southprint knew there was no reasonable basis on which to initiate or pursue this suit. Specifically, H3 alleges that at the time Southprint filed the instant suit, Southprint misrepresented the grounds for its claim that its manufacturing agreement with DADA had been terminated, the facts supporting its motion for a temporary restraining order, and the consumer market for its products. While the court granted H3's motion for summary judgment, there is no basis for an award of attorneys' fees as an exceptional case. Although the court disagreed that the facts alleged by Southprint created a material issue of fact sufficient to survive summary judgment, they were sufficient to support both the denial of H3's motion to dismiss and the entry of a stipulated preliminary injunction. Under these circumstances, this case cannot be considered exceptional so as to allow an award of attorneys' fees.

As to defendant's assertion that Southprint misrepresented its claim that the manufacturing agreement with DADA had been terminated, it is clear that Southprint had a good faith basis on which to assert its claim. In that regard, Southprint argued that it began receiving goods from a DADA affiliate in another country which was owned and managed by different, albeit related, parties, and that freight costs associated with this affiliated entity were higher. Although the court ultimately disagreed with Southprint that these issues created a genuine issue

2

of material fact, the court's summary judgment ruling does not transform this hotly contested case into an exceptional one warranting an award of attorneys' fees.

Next, defendant asserts that in its motion for a temporary restraining order, Southprint misrepresented conversations between Nathan Ferman and two Southprint customers, Marilyn Hurst, of AutoZone, and Barbara Tolbert, of CSK. Defendant alleges that the deposition testimony of both Hurst and Tolbert establish that H3 never made disparaging statements to either party regarding Southprint's source of supply, financing, or licensing status. Although Southprint's claims regarding its relations with AutoZone and CSK were not sufficient to survive summary judgment, there was evidence that H3's agents had discussions with those customers raising questions regarding Southprint's ability to meet the buyers' needs. Indeed, H3 agreed to a preliminary injunction preventing it from communicating with Southprint's customers that Southprint was financially unstable, that it lost various licenses or that it lost its source of supply. At the end of the day, while the court found that the questions raised and comments made by H3 were not actionable as either tortious interference or defamation, this case falls far short of the exceptional mark.

Finally, there is likewise no merit to the suggestion that attorneys' fees be awarded because of Southprint's assertions concerning its customer base. In support of its failed motion to dismiss, H3 argued that because the statements made by H3's agents were made to only two buyers, there could be no violation of the Lanham Act. Southprint countered that these two customers were very large and constituted a substantial segment of its sales of designs licensed by Ford, Chevy, Dodge and NASCAR. As a result, sufficient impact was alleged. The court's summary judgment ruling made no finding adverse to Southprint on this issue; rather, the

3

dismissal of the Lanham Act claim was entirely premised on the lack on any adverse impact on the customers as a result of such statements. Accordingly, the allegations concerning Southprint's customer base provide no support for H3's request for attorney's fees.

As this case is a far cry from an exceptional case, the motion for attorney's fees will be denied by separate order.

## II.

H3 submitted a Bill of Costs totaling $11,962.36, to which Southprint has lodged certain objections. Rule 54 of the Federal Rules of Civil Procedure provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d)(1). Although the clerk of the court assesses the cost, on motion made within five days of the assessment, the action of the clerk may be reviewed de novo by the court. See id, 10 Moore's Federal Practice § 54.100[3], at 54-145. Rule 54 does not provide the court with "unrestrained discretion" to reimburse the prevailing party; rather, the court may only tax those costs authorized by statute. Farmer v. Arabian Am. Oil Co., 379 U.S. 227, 235 (1964); Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 444-45 (1987). But within the enumerated general taxation-of-costs statute, 28 U.S.C. § 1920, the court has discretion in determining and awarding costs. Id. Once it is established that an item falls within 28 U.S.C. § 1920, the prevailing party is presumed to be entitled to recover costs, and the losing party bears the burden of establishing that such an award is inappropriate. Principe v. McDonald's Corp., 95 F.R.D. 34, 36 (E.D. Va. 1982). Furthermore, absent an abuse of discretion, the district court's award of costs will not be disturbed on appeal. Herold v. Hajoca Corp., 864 F.2d 317, 321 (4th Cir. 1988), cert. denied, 490 U.S. 1107 (1989).

4

## 1. Clerk's Fees

H3 seeks to recover $30.00 in fees incurred in filing a motion to compel AutoZone to produce e-mail potentially relevant to the litigation. Southprint objects to the taxation of fees incurred in filing a motion to compel in a third party discovery dispute. Although, docket fees are unquestionably costs, the award of such fees is purely discretionary. Karsoules v. Moschos, 16 F.R.D. 363 (E.D.Va. 1954). The court finds that these costs in the amount of $30.00 are taxable to Southprint.

## 2. Service Fees

Next, Southprint seeks to recover $551.00 in fees for the service of process made by private process servers. Although Southprint agrees that service fees incurred for the issuance of summons and subpoenas are generally taxable costs, Southprint argues that fees paid to private process servers and extraordinary expenses such as fees incurred for "rush service" or "same day service" are not allowed.

Although there is a split in the courts as to whether fees for private process servers should be taxed as costs,[1] and the Fourth Circuit has yet to provide any guidance on this issue, this court has repeatedly held that such fees are taxable costs. See, e.g., Tunnell v. Ford Motor Co., 2005 WL 3050316 (W.D. VA), Hairston Motor Co. v. Northland Insurance Co., 1994 WL 874390

---

[1] See, e.g., Cofield, et al. v. Crumpler, 179 F.R.D. 510, 516 (E.D. Va. 1998)(noting the split in the cases and disallowing the taxation of costs of private process servers); United States ex rel Evergreen Pipeline Constr. Co. v. Merritt Meridian Constr. Corp., 95 F.3d 153, 172 (2nd Cir. 1996); Crues v. KFC Corp., 768 F.2d 230, 234 (8th Cir. 1985); Pion v. Liberty Dairy Co., 922 F.Supp. 48, 53 (W.D. Mi. 1996); and Zdunek v. Washington Metro. Area Transit Auth., 100 F.R.D. 689, 692 (D.D.C. 1983); but see, e.g., Tang How v. Edwards J. Gerrits, Inc., 756 F.Supp. 1540 (S.D. Fla. 1991), aff'd, 961 F.2d 174 (11th Cir. 1992); Roberts v. Homelite Div. of Textron, Inc., 117 F.R.D. 637, 641 (N.D. Ind. 1987); and Card v. State Farm Fire & Cas. Co., 126 F.R.D. 658, 662 (N.D. Miss. 1989), aff'd, 902 F.2d 957 (5th Cir. 1990).

(W.D. VA). Accordingly, this court follows that precedent and will allow the taxation of fees of private process servers. However, as H3 has not provided any reasonable justification for the need to incur additional fees for "rush" or "expedited" service, the court finds that these costs are not recoverable, and awards costs in the amount of $481.00.[2]

### 3.    Court Reporter and Transcript Fees

H3 also seeks to recover $8,626.70 in deposition costs. Under 28 U.S.C. § 1920(2), the costs of an original deposition taken by the prevailing party are recoverable to the extent those depositions were "necessarily obtained for use in the case." However, when those depositions were not used at trial or to support a preliminary or dispositive motion, those costs are not recoverable. Wyne v. Medo Indus. Inc., 329 F.Supp. 2d 584, 589 (D.Md. 2004)(finding that only those depositions submitted in connection to the dispositive motion that terminated the litigation were recoverable). The court finds that only the depositions of Todd Hammett, Nathan Ferman, Barbara Tolbert, Marilyn Hurst, William Edwards, Raul Alvarez, Scott Hines, William Hull, and Michael McGhee were submitted and necessary in rendering a decision on the motion for summary judgment. Accordingly, only the costs associated with those depositions are recoverable.

Additionally, Southprint seeks a reduction in the amount of court reporter and transcript fees which should be taxed as costs for fees incurred for items produced in addition to the actual

---

[2]This amount reflects a deduction of the rush service fee from those bills where fees had been itemized. The court notes that no rush fee was subtracted from the fee incurred in serving Raul Alveraz, as H3 avers that there was no "rush" fee, but merely a misprint on the bill. Additionally, although not itemized, the court deducted $10.00 from the fee incurred on December 12, 2002, for the cost of service on a second, unnamed party at AutoZone, as the itemized bill from the private process server indicates only half of the usual fee, including the rush service fee, was due for this service as it was for "additional paper at the same address."

6

transcript, such as condensed versions of the transcripts, word indices, ASCII discs, and e-transcripts. The court agrees that H3 may not tax as costs items prepared in addition to the actual transcripts nor for the costs of postage or shipping. Scallett v. Rosenblum, et al., 176 F.R.D. 522, 529 (W.D.Va. 1997). Additionally, as defendants have failed to itemize these costs on nearly all of the receipts, the court finds that $55.00 is an appropriate deduction for the service of condensing, providing a disc copy, and an electronic copy, and $7.00 is an appropriate deduction for shipping for those receipts which do not itemize those costs, as evinced by the itemized bill of Central Virginia Reporters. See id. (finding that as defendants failed to properly itemize all taxable deposition bills, the court could determine an appropriate deduction for non-recoverable fees in taxable depositions). Further, the court finds that defendants are not entitled to recover for the inclusion of exhibits in the transcripts of depositions, as these were primarily for the convenience of counsel. Id. Accordingly, the court finds that H3 is entitled to costs for transcripts totaling $3,415.30.[3]

Furthermore, as to the cost of the transcript from the summary judgment hearing, the court finds that H3 has made no showing that the transcript was necessary. H3 did not cite the transcript in its motion for attorney fees nor has H3 reasonably explained why it requested the transcript after the motion for summary judgment had been granted in its favor. Accordingly, the court finds that H3 is not entitled to recover the costs of this transcript.

---

[3]This figure reflects the court reporter fee and the cost for preparing the transcript of Todd Hammett, Nathan Ferman, Barbara Tolbert, Marilyn Hurst, William Edwards, Raul Alvarez, Scott Hines, William Hull, and Michael McGhee, as supported by the bills attached as Exhibits to C to Riopelle's declaration, minus a $55 fee for preparation of mini transcripts, disc, and electronic copies and $7 for shipping and handling, per transcript.

7

### 4.    Copy Costs

Finally, H3 seeks $5,907.37 for fees incurred for copies "obtained for use in this case." In the alternative, H3 seeks $3,114.91 for copies supplied to the court, used as exhibits, or which were furnished to Southprint. H3 states that in house copies were made at a cost of $0.10 per page, and large jobs were outsourced. However, H3 has not provided any receipts for copy jobs which were outsourced. Southprint generally objects to the inclusion of copies which were not used as court exhibits nor furnished to the court or opposing counsel. Further, Southprint argues that as evidenced by the large discrepancy between the actual number of the documents produced to the court or counsel or allegedly used as exhibits in a deposition and the copy charge associated with generating copies of those documents, H3's itemization is so skewed the entire request for copy charges should be denied.[4]

Although § 1920(4) provides that a court may tax fees incurred for photocopies "necessarily obtained for use in the case," only those photocopying expenses which are directly attributable to documents used as court exhibits or produced to the court or opposing counsel are recoverable. Wyne, 329 F.Supp.2d at 590. H3 alleges that it generated $3,114.91 in copy charges for documents used as exhibits or to be furnished to the court or opposing counsel. However, in reviewing H3's itemized list, the court finds that the number of copies H3 claims to have made and the number of the actual documents used as exhibits or submitted to the court or opposing counsel is significantly different. In tabulating the actual number of pages, even assuming that H3 provided a hard copy of every motion and exhibit to the court, when applicable, and provided

---

[4]In support of its assertion, Southprint provided a list of questionable copy fees, the number of pages produced based on the cost, and a comparison to the actual length of the document used as an exhibit or produced to Southprint or the court.

8

all service copies to SouthPrint, the court finds that at most H3 produced only 4,737 pages of documents.[5] Furthermore, the court finds H3's assertion that it produced nearly 17,000 pages of exhibits and documents in preparation for a trial which was more than four months away questionable. As H3 has provided no further explanation or description of the documents, the court cannot find this production was reasonably justified. Accordingly, the court finds that H3 is only entitled to receive costs for copies in the amount of $473.70.[6]

### III.

For the foregoing reasons, a separate Order will be entered denying H3's motion for attorney fees and reducing the Bill of Costs taxed to Southprint to $4,400.00, consisting of $30.00 for clerk's fees, $481.00 for service fees, $3,415.30 for transcript costs, and $473.70 for copying.

Entered this 23rd day of November, 2005.

Michael F. Urbanski
United States Magistrate Judge

---

[5] In reaching this figure, the court reviewed defendant's copy charge requests and included reasonable costs for the copies based on the actual length of the document and its purpose. The court also included those copies not questioned by Southprint and those for which Southprint provided no valid basis for objection. See chart attached as Exhibit A. Additionally, this figure includes all documents produced as exhibits during depositions.

[6] As H3 averred that it cost $0.10 per page to produce copies in house, and has not alleged that outsourcing copies was more expensive, the court awards costs at H3's stated cost.

Case 4:02-cv-00038-NKM-mfu   Document 121   Filed 11/23/05   Page 9 of 10   Pageid#: 1087

# Exhibit A - Copy Expenses

| Date | Cost as Provided by H3 | No. of Pages Based on H3's Cost ($.10/page) | Actual No. of Pages of Submission/ Discovery/ Exhibit | Copy provided to court | Service Copy | Total No. of pages (Court Copy + Serivce Copy) |
|---|---|---|---|---|---|---|
| 08/27/2002 | $7.60 | 76 | 12 | yes | yes | 24 |
| 08/28/2002 | $17.20 | 172 | 15 | no | yes | 15 |
| 09/30/2002 | $5.20 | 52 | 25 | no | yes | 25 |
| 10/07/2002 | $3.10 | 31 | 9 | yes | yes | 18 |
| 10/25/2002 | $3.80 | 38* | | | | 38 |
| 11/19/2002 | $7.90 | 79 | 22 | no | yes | 22 |
| 11/22/2002 | $21.40 | 214 | 21 | yes | yes | 42 |
| 11/25/2002 | $71.26 | 712 | 222 | no | yes | 222 |
| 01/10/2003 | $1.90 | 19 | 13 | no | yes | 13 |
| 01/21/2003 | $1.40 | 14* | | | | 14 |
| 01/22/2003 | $49.70 | 497 | 10 | no | yes | 10 |
| 02/12/2003 | $4.90 | 49 | 15 | yes | yes | 30 |
| 03/03/2003 | $19.10 | 191** | | | yes | 191 |
| 04/03/2003 | $15.70 | 157 | 13 | no | yes | 13 |
| 04/21/2003 | $3.20 | 32* | | | | 32 |
| 05/02/2003 | $1.60 | 16** | | | | 16 |
| 05/06/2003 | $1.70 | 17** | | | yes | 17 |
| 05/19/2003 | $35.70 | 357* | | | yes | 357 |
| 06/02/2003 | $25.20 | 252 | 54 | no | yes | 54 |
| 06/30/2003 - 07/01/03 | $140.40 | 1404 | 173 | no | yes | 173 |
| 07/07/2003 | $4.90 | 49 | 6 | yes | yes | 12 |
| 08/17/2004 | $1.60 | 16** | | | | 16 |
| 08/23/2004 | $7.10 | 71** | | | | 71 |
| 11/23/2004 | $61.50 | 615 | 12 | no | yes | 12 |
| 12/03/2004 | $446.85 | 4468 | 1075 | no | yes | 1075 |
| 12/16/2004 | $145.50 | 1455 | 47 | no | yes | 47 |
| 01/05/05 - 01/10/05 | $73.60 | 736 | 87 | yes | yes | 174 |
| 01/18/05 - 01/19/05 | $55.40 | 554 | 21 | no | yes | 21 |
| 01/27/2005 | $156.50 | 1565** | | | | 1565 |
| 01/28/2005 | $38.28 | 382** | | | | 382 |
| 02/14/2005 | $15.40 | 154 | 17 | yes | yes | 34 |
| 04/13/2005 | $2.40 | 24 | 2 | no | yes | 2 |
| Total No. of pages to be taxed as copy expense | | | | | | 4737 |

* Southprint provided no reasonable basis on which to object to costs
** Southprint did not object to the inclusion of this cost